Parker C. J.
delivered the opinion of the Court. Had Galbraith acquired the absolute property in any specific quantity of the slate, so that his sale to Young passed the property without any act of transfer by the defendants ?
The writing of the 29th of August, 1826, is evidence of a contract of sale executory, depending upon a condition precedent to be performed by Galbraith, viz. payment of the price, and requiring a separation of so much as should be paid for from the common stock, which would remain the property of the defendants.
By the writing Austin agrees to sell 106 tons, 4 cwt., of slate ; it is to be sold and to be paid for by Galbraith as taken ¿way.
On the 23d of November, 1826, the defendants received from Galbraith 420 dollars, which they say is on account of a sale of slate to him as per agreement of the 29th of August. This entitled Galbraith to so many tons of the slate as according to the stipulated price by the first agreement would amount to that sum, and gave him a right to have it weighed off and separated for him, but did not give him the property in any specific 14 tons without such separation ; and so it was understood by the parties, for it is proved, that at the time of the payment it was agreed there should be a delivery of 14 tons, and the clerk was ordered to weigh it off, and at the time the clerk and Galbraith went to the place where the slate was piled, but no weigher appearing, no slate was weighed off and none was delivered. Admitting that Galbraith might then have proceeded to separate 14 tons from the mass and take it into his possession, he did not do it; on the contrary, it was proved that he waived any such right, for after attempting to persuade the clerk to let him measure it off or to give him a symbolical delivery, which was refused because contrary to the orders of the clerk, Galbraith said he would call at the defendants’ store in a few days, and would let them know when he should want the slate, and then would have it weighed off. So that the contract still remained executory, being incomplete as a sale for want of delivery : a delivery, or at least the ascertaining by weight the quantity to be delivered, being essentia) to the acquisition or absolute property in Galbraith.
*286 It is not like the case of Damon v. Osborn, 1 Pick. 476. for there the contract of sale was considered executed by a delivery of 800 out of the 12,000 bricks which were the subject of the sale. So in this case, if part of the slate had been delivered, or if there had been, as Galbraith requested, a symbolical delivery, the sale might have been considered complete, and perhaps trover would have lain for Galbraith, or for the plaintiff to whom he had transferred ; but nothing having been done, the contract remained executory, and the transfer was only of a chose in action, which would not bind the defendants to their prejudice without notice of its existence.
The strongest case cited by the plaintiff’s counsel to show that the property of the slate vested in him, is that of White-house v. Frost et al. 12 East, 614. Indeed that case, if held to be law, would come very near to settling this, though there was a circumstance in it of some importance, which does not exist here. A, owner of 40 tons of oil in a cistern, sold 10 tons to B. B sold the same to C and gave him an order on A for the 10 tons, which order was accepted by A. It was held that C might maintain trover for the 10 tons, though it never had been drawn off or separated from the 40 tons in the cistern. How the court reconciled this with the principle which governs an action of trover, viz. that it lies only for a thing certain and specific, does not appear. It was impossible to know which ten gallons of the 40 belonged to the plaintiff. It would seem that drawing off and measuring was necessary to give a distinct property in severalty. This case, decided in the King’s Bench, has not been treated with much respect in the Common Pleas. In the case of White v. Wilks, 5 Taunt. 176, it is expressly denied to be law. There a quan tity of oil was sold, being part of a large parcel, and it was holden that a separation from the common mass was essential to the vesting of the property so as to maintain trover. And a like opinion was expressed in regard to the case of Whitehouse v. Frost, in the case of Austin v. Craven, 4 Taunt. 645, which was a sale of a part of a quantity of sugar.
We feel authorized then to say, in regard to the case before us, that no part of the slate became the property of Galbraith *287 until it was weighed off to him;[1] and so it seems to have been clearly understood by Galbraith himself, according to the evidence before stated. It was therefore subject to the new contract made on the 1st of December, for no notice had been given to the defendants of the plaintiff’s interest, and in this respect the case is not so favorable for the plaintiff as was the case of Whitehouse v. Frost, for there the original vendor had assented to the second sale by accepting the order drawn by the first in favor of the second vendee.
The plaintiff claims title in a specific 14 tons of this slate by purchase from Galbraith ; but he could purchase no more than Galbraith’s right, which was to have that quantity weighed off and delivered to him. The actual property still remained in the defendants, subject to the contract of sale executory, and therefore liable to be rescinded by the parties to it, unless the party contracting to sell had notice of a transfer of Galbraith’s right to the plaintiff. No such notice was given until the subsequent transaction between Galbraith and the defendants, which transaction was undoubtedly fraudulent on the part of Galbraith towards the plaintiff, if the bargain between them was, as it appears to have been, for a valuable consideration paid by Young.
The plaintiff’s receipt and bill of parcels is dated on the same day as the receipt of the defendants to Galbraith for 420 dollars, and it could convey only the interest or right which Galbraith had in the slate, which was to have 14 tons weighed off and delivered to him. In this state of things, on the 1st of December a settlement of the whole transaction respecting the slate is made between Galbraith and the defendants, no information having been given to them of the bargain between Galbraith and the plaintiff, and in this settlement an entire disposition of all the slate is made, credit given for all the money and notes received, and a balance found due to the defendants of 607 dollars 62 cents, on which a memorandum was made at *288 the time, that 23 tons of slate, which was all that remained, was to be delivered when this note was paid off. The sum of 420 dollars, paid on the 23d of November, which entitled Galbraith to the delivery of 14 tons of slate, was credited to him in this settlement. We think it clear that the defendants have a right to retain the 23 tons left as a security foi Galbraith’s note. They had never parted with the possession; they did not know that he had sold to the plaintiff; there was not an absolute sale of the 14 tons ; they have received nothing for it, for the money has been restored ; and it is fit that the plaintiff, who trusted to the personal credit of Galbraith, should suffer the loss, rather than the defendants, who held upon the property.[1]

Judgment according to verdict

 See Merrill v. Hunnewell, 13 Pick. 215, 216; 2 Kent’s Comm. (3d ed.) 503, 504, 546: Simmons v. Smith, 5 Barn. & Cressw. 857; Rhode v. Thwaites, 9 Dowl. & Ryl. 293; 6 Barn. & Cressw. 688; Ward v. Shaw, 7 Wendell, 404; Johnson v. Hunt, 11 Wendell, 138, 139; Riddle v. Varnum, 20 Pick. 280; Rapelye v. Mackie, 6 Cowen, 260.

 See Parks v. Hall, 2 Pick. 212; Barrett v. Pritchard, 2 Pick. 515; Dixon v. Yates, 5 Barn. & Adol. 313